**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:25-cr-31 (02) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RYAN WADE JOHNSTON, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**<u>DEFENSE TRIAL BRIEF</u>**

Mr. Ryan Johnston is set to proceed to a bench trial on June 15, 2026. He has four charges pending, two of which will be addressed in this trial brief: the enticement charge and the production charge. As a matter of law, Mr. Johnston anticipates that the evidence, when taken in the light most favorable to the Government, will be insufficient to support a finding of guilty on those two counts. This brief sets out to lay the legal framework for those arguments.

1

**TABLE OF CONTENTS**

I.    Count 14 – Enticement in violation of 18 USC § 2422(b) and 18 U.S.C. § 2. ................... 3

    A.    The Elements ........................................................................................................ 3

    B.    There is no completed crime for Mr. Johnston. ............................................. 7

    C.    The evidence will not support a conviction under an attempt theory. ........................... 7

        1.    As a matter of law, intent to engage in illegal sexual activity alone is insufficient to support a conviction. ................................................................................... 7

        2.    The culpable intent the Government must prove beyond a reasonable doubt is the intent to obtain the child's *assent* to sexual activity. ........................................... 9

        3.    Mr. Johnston did not attempt to persuade, induce, entice, or coerce the child to engage in sexual activity. ...................................................................... 10

        4.    Mr. Johnston did not attempt to persuade, induce, entice, or coerce Mr. Buenaga to give him access to the child. ....................................................... 14

        5.    Mr. Johnston did not take a substantial step towards persuading the child to assent to sexual activity. ............................................................................. 20

    D.    The evidence will not support a charge that Mr. Johnston aided or abetted Mr. Buenaga in violating 18 U.S.C. § 2422(b). .................................................................... 21

II.    Count 8 – Production of Child Pornography in violation of 18 U.S.C. § 2251(a) ........... 22

III.    Conclusion ................................................................................................. 28

## I.   Count 14 – Enticement in violation of 18 USC § 2422(b) and 18 U.S.C. § 2.

### A.  The Elements

As charged, the Government may proceed under the theory that there was a completed crime, that Mr. Johnston attempted to commit the charged offense, or that he aided and abetted Mr. Buenaga in completing the offense.

As set forth in 18 U.S.C. § 2422(b),

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

18 U.S.C.A. § 2422(b). "To obtain a conviction under this provision, 'the government must prove that the defendant:

(1) used a facility of interstate commerce;

(2) to knowingly entice or attempt to entice any person under the age of 18;

(3) to engage in illegal sexual activity.'"

*United States v. Clarke*, 842 F.3d 288, 297 (4th Cir. 2016) (quoting *United States v. Engle*, 676 F.3d 405, 411-412 (4th Cir. 2012)).

When the Government proceeds under a theory of attempt, "the government must prove beyond a reasonable doubt, that,

(1) he had culpable intent to commit the crime and

(2) he took a substantial step towards completion of the crime that strongly corroborates that intent." *Id.* (quoting *Engle* at 419-420).

As for the aiding and abetting theory, 18 U.S.C. § 2 provides,

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
>
> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C.A. § 2. Under and aiding and abetting theory, the Government must prove **"**that the substantive offense had been committed by someone and that the defendant aided and abetted him." *United States v. Indivior Inc.*, 451 F. Supp. 3d 553, 558 (W.D. Va. 2020) (citing *United States v. Horton*, 921 F.2d 540, 544 (4th Cir. 1990)). "[T]he Government must produce sufficient evidence to show that the defendant knowingly associated himself with and participated in the criminal venture." *United States v. Ecklin*, 837 F. Supp. 2d 589, 591–92 (E.D. Va. 2011). "In order to prove the element of association, the Government must show that the defendant shared in the principal's criminal intent." *Id.* "As the Fourth Circuit stated in *Winstead,* this requires evidence that the defendant be aware of the principal's criminal intent and the unlawful nature of his acts." *Id.* (citing *United States v. Winstead*, 708 F.2d 925, 927 (4th Cir. 1983)). "Evidence that the defendant merely brought about the arrangement that made the criminal acts of the principal possible does not alone support a conclusion that the defendant was aware of the criminal nature of defendant's acts." *Id.*

Mr. Johnston anticipates that presentation of the relevant evidence will be straightforward. The indictment charges that on or about January 24, 2025, Alex Buenaga and Ryan Johnston,

did use a facility and means of interstate and foreign commerce to knowingly persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which a person can be charged with a criminal offense, namely, Aggravated Sexual Battery, which was a criminal offense under Virginia Code § 18.2-67.3 (Aggravated Sexual Battery), and aided and abetted the same.

(Indictment, Doc. 1, PageID # 7-8). Mr. Johnston and Mr. Buenaga exchanged messages that both parties stipulate are admissible and that each party waived any objection to their admissibility for any reason. (Trial Stipulation # 2). Mr. Johnston agreed to go to Mr. Buenaga's home where he was arrested outside of the home. Mr. Johnston had no communication with or direct contact with the child.

The fact the alleged crimes occurred in the Eastern District of Virginia is not disputed. The jurisdictional element will be met as the messages were exchanged while Mr. Johnston was in the Eastern District of Virginia and Mr. Buenaga's address is also within the district. Mr. Johnston traveled to Mr. Buenaga's address and was arrested outside of it.

The use of a facility and means of interstate and foreign commerce element will be met. Mr. Johnston used a cell phone to send relevant messages to Mr. Buenaga. The parties stipulate that the phone was used exclusively by Mr. Johnston, that it was a Samsung, and that it was manufactured outside of the United States. (Trial Stipulation ## 2 and 3). Mr. Johnston has waived objections to the admissibility of the contents of the phone based on hearsay, expert testimony, or authentication grounds. (Trial Stipulation #2).

The age of the child and the fact that any sexual activity with the child is illegal sexual activity are not disputed. The parties stipulate that the child involved was approximately 6 months old. (Trial Stipulation # 4). Mr. Johnston did not have any contact with the child.

To be clear, the undisputed fact that Mr. Johnson had no communication or contact with the child is not determinative on its own. It is not necessary for the Government to prove a defendant had direct contact with the child involved. *United States v. Clarke*, 842 F.3d 288, 298 (4th Cir. 2016) ("We agree and therefore hold that 'communications with an intermediary aimed at persuading, inducing, enticing, or coercing a minor to engage in sexual activity fit within [the] common understanding of a criminal attempt that is prohibited by [Section] 2422(b).'" *United States v. Roman*, 795 F.3d 511, 517 (6th Cir. 2015) (first alteration in original) (internal quotation marks omitted)). The Sixth Circuit, collecting several cases from other circuits, has held,

> We agree with our many sister circuits that have held that a defendant violates § 2422(b) by communicating only with an adult intermediary if the defendant's communications with that intermediary are intended to persuade, induce, entice, or coerce the minor child's assent to engage in prohibited sexual activity. *United States v. Hite*, 769 F.3d 1154, 1160 (D.C.Cir.2014); *United States v. McMillan*, 744 F.3d 1033, 1036 (7th Cir.), *cert. denied*, ⸻ U.S. –⸻, 135 S.Ct. 292, 190 L.Ed.2d 213 (2014); *United States v. Caudill*, 709 F.3d 444, 446–47 (5th Cir.), *cert. denied*, ⸻U.S. ⸻–, 133 S.Ct. 2871, 186 L.Ed.2d 922 (2013); *United States v. Olvera*, 687 F.3d 645, 647–48 (5th Cir.2012) (per curiam); *United States v. Berk*, 652 F.3d 132, 140 (1st Cir.2011); *United States v. Lanzon*, 639 F.3d 1293, 1298–99 (11th Cir.2011); *United States v. Lee*, 603 F.3d 904, 912–16 (11th Cir.2010); *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir.2010) (per curiam); *United States v. Nestor*, 574 F.3d 159, 161–62 (3d Cir.2009); *United States v. Spurlock*, 495 F.3d 1011, 1013–14 (8th Cir.2007).

*Roman* at 516. Accordingly, this brief will focus on cases where a defendant had direct contact with an intermediary.

Whether Mr. Johnston knowingly persuaded, induced, enticed, and/or coerced the minor to engage in sexual activity is disputed. Mr. Johnston anticipates that the parties may disagree about the legal standard for the intent element. The parties disagree as to whether the facts to be introduced trial will support a conviction.

6

**B.  There is no completed crime for Mr. Johnston.**

Mr. Johnston anticipates the Government will proceed under an attempt theory. Mr. Johnston had no communication or contact with the child. There is no evidence that Mr. Johnston "knowingly enticed" the child or engaged in illegal sexual activity with her. There is no evidence that he enticed another person to engage in sexual activity with her. Accordingly, the Government cannot succeed under a theory of a completed offenses.

**C.  The evidence will not support a conviction under an attempt theory.**

This section of the brief will focus on the culpable intent necessary to support an attempt to violate 18 U.S.C. § 2422(b). The Government must prove that Mr. Johnston had "the culpable intent to commit the crime." *Clarke*, 842 F.3d at 297 (quoting *Engle*, 676 F.3d at 419-420). The culpable intent is to persuade, include, entice, or coerce a child to assent to illegal sexual activity.

**1.  As a matter of law, intent to engage in illegal sexual activity alone is insufficient to support a conviction.**

To be clear, Mr. Johnston denies having intent to engage in sexual activity with the child. That said, should this Court find at a Rule 29 stage that, when taken in the light most favorable to the Government, there is evidence of such intent, such a finding does not satisfy the elements of the offense.

As clearly held by the Fourth Circuit in *U.S. v. Engle*, it is the act of persuading that is the subject of the statute, not the performance of the sexual acts. *Engle* at 419. 18 U.S.C. § 2422(b) "…criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions [concerning] the actual consummation of sexual activities with the minor." *Id.* (internal citations and quotations omitted) (emphasis in original). "Although 'it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act

after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice [in § 2422(b)] to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.'" *Id.* (citing *United States v. Bailey,* 228 F.3d 637, 639 (6th Cir.2000)).

The Fourth Circuit's finding the statute criminalizes the persuasion and the attempt to persuade rather than the sex acts themselves is consistent with case law from other federal circuits. *See United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004) ("The underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself."); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) ("…Congress has made a clear choice to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves."); *United States v. Dwinells*, 508 F.3d 63, 71 (1st Cir. 2007) ("Section 2422(b) criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual consummation of sexual activities with the minor."); *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005) ("Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act."); *United States v. Brand*, 467 F.3d 179, 202 (2d Cir. 2006), *abrogated on other grounds by United States v. Cabrera*, 13 F.4th 140 (2d Cir. 2021) ("A conviction under § 2422(b) requires a finding only of an attempt to entice or an intent to entice, and not an intent to perform the sexual act following the persuasion."); *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014) ("Today, we join our sister circuits and hold that communications with an adult intermediary to persuade, induce, entice, or coerce a minor are punishable under § 2422(b), so long as the defendant's interaction with the intermediary is aimed at transforming or overcoming the minor's will in favor of engaging in illegal sexual activity.").

8

**2. The culpable intent the Government must prove beyond a reasonable doubt is the intent to obtain the child's *assent* to sexual activity.**

As set forth by the Fourth Circuit, a person violates Section 2422(b) if he "knowingly persuades, induces, entices, or coerces" a minor to engage in unlawful sexual activity, or attempts to do so. 18 U.S.C. § 2422(b)." *Clarke*, 842 F.3d at 296. "…[T]hese terms are effectively synonymous, conveying the idea of one person leading or moving another by persuasion or influence, as to some action [or] state of mind. Our interpretation of these terms accords with the statute's intent to criminalize[ ] an intentional attempt to achieve a mental state—a minor's assent." *Id.* (quotations and citations omitted) (emphasis added). In *Clark*, the Fourth Circuit found that the district court's instructions on this element "fairly and accurately reflected the applicable law." *Id.* at 297.

> In instructing the jury, the district court explained that "[t]he terms persuade, induce, and entice should be given their ordinary meaning. In ordinary usage, the words are effectively synonymous, and the idea conveyed is of one person leading or moving another by persuasion or influence as to some action or state of mind." J.A. 217. These instructions mirror Engle almost verbatim. See Engle, 676 F.3d at 411 n.3. And, by emphasizing that the jury must find that Defendant "le[d] or mov[ed] [a minor] by persuasion or influence" to engage in sex acts, the district court's jury instructions required the jury to find that Defendant made "an effort to alter [a minor's] mental state," rather than "merely convey[ing] the notion of 'causation,' " as Defendant suggests. Appellant's Br. at 26.

*Id.* at 296–97.

There is disagreement between the federal circuits as to the interpretation of the statutory language. Some circuits have held that the defendant must either have or attempt to have a persuasive effect on the minor. Other circuits have held that the defendant can rely on the intermediary to persuade the child and that a conviction can stand as long as the defendant either

persuaded or attempted to persuade the intermediary to give the defendant access to the child. Mr. Johnston will prevail under either framework.

### 3. Mr. Johnston did not attempt to persuade, induce, entice, or coerce the child to engage in sexual activity.

The Sixth Circuit, in *United States v. Roman*, upheld an attempt conviction in a case where the defendant's communications to the intermediary were intended to obtain the minor's assent to sexual activity. The defendant plead to one count of attempting to violate 18 U.S.C. § 2422(b). *Roman*, 795 F.3d at 513. Roman's communications were solely made to the intermediary who was an undercover officer purporting to be the father of an 11-year old girl. *Id.* The defendant sent communications designed to persuade the father and communications designed to persuade the minor. The defendant "tried to flatter" the child's father and agreed "with any parameters he set." *Id.* at 517. "Roman then sought to utilize the influence of Katie's father on Katie by promising him that he did not have any diseases, that he could not cause pregnancy,  and that he would use condoms. Roman described similar sexual conduct he had engaged in with other minor females to assure the father that he would not injure his child." *Id.* at 517-518. Then, importantly,

> Roman tried to achieve Katie's assent to sexual activity by asking the father if he had told Katie about Roman, asking whether she was ready to engage in sexual acts, and seeking to find out what she liked sexually. Roman expressed a desire that the minor child be comfortable with him before attempting any sexual conduct with her. Roman also planned to take the child shopping for clothes to encourage her to engage in sexual conduct with him.

*Id.* at 518.

The Seventh Circuit held that when the Government seeks to prove an "intermediary-based" attempt under § 2422(b), the Government must offer evidence of the defendant's effect or attempted effect on the child's mind. *United States v. Baird*, 70 F.4th 390, 393 (7th Cir. 2023). "A

10

defendant who manifests an intent to engage in sexual activity with a minor through an intermediary and takes a step to influence the child to submit to that activity is guilty of attempt under § 2422(b)." *Id.* (emphasis added). The court noted a graphic discussion between the defendant and the undercover officer but then explained, "…merely talking about sexual activity with an adult intermediary does not necessarily establish an attempt to influence the child into submitting to that activity." *Id.* at 393 (emphasis added). "The evidence must go further and show that the defendant's conversation with the intermediary not only entailed arranging a sexual encounter but also had some 'attempted effect[ ] on the child's mind.'" *Id.* (citing *United States v. McMillan*, 744 F.3d 1033, 1036 (7th Cir. 2014)) (emphasis added). "What pushed the government's case over the line is Baird's specific exchange with Agent Wainscott about presenting the child with a gift as a way to break the ice and gain her favor." *Id.* at 393. The Court agreed with the district court who had presided over the case noting the exchange about the type of candy the child preferred "supplied key evidence." *Id.*

> This back-and-forth, though brief, shows that the desired sexual encounter Baird described in other portions of his communications was more than just wishful thinking. He wanted to know the exact gift that would best earn the child's trust when he met her later that day. And the plain import of the exchange shows that he wanted to use the candy to help facilitate the sexual encounter with her.

*Id.* at 394.

The defense anticipates that, when taking the evidence in the light most favorable to the Government, Mr. Johnston's case will be on point with *U.S. v. Nitschke*, decided by the D.C. District Court in 2011. In *Nitschke*, a detective posed as a father of 12 year old boy in a chat room "frequented by individuals who have a sexual interest in prepubescent children." *United States v. Nitschke*, 843 F. Supp. 2d 4, 5-6 (D.D.C. 2011). Nitschke initiated a private chat with the detective.

*Id.* at 6. The two exchanged graphic messages. *Id.* Nitschke wrote, "I like the way you think .... taboo, young, etc .... party friendly too here .... how goes?" *Id.* at 6. The detective initiated the conversation about the fictitious minor child. *Id.* When the detective asked the defendant if he would be interested, the Defendant replied, "hey bud .... said I was into that in my first message ... fuck yeah ... how old is he? You mind pnp ['party and play,' meaning to use drugs and have sex]?" *Id.* The two adults arranged to meet. Nitschke was arrested when he arrived at the location. *Id.*

After a thorough analysis of cases where a defendant only communicated with the intermediary, the district court analyzed, "The theory behind these cases is that the defendant's communications through the adult intermediary sought to cause the assent of the minor to the defendant's proposals." *Id.* at 13. "The focus is on the intent of the defendant through his communications to influence the child's assent." *Id.* As to the facts of the case, the court recognized,

> Nitschke never sought Detective Palchak's help in procuring the fictitious minor. He did not ask Palchak to pass along any communication whatsoever to the minor. He did not make any promises to the minor through Palchak. He did not offer any money or anything else of value, and he did not invite Palchak or the minor anywhere.

*Id.* "Given the undisputed facts here, no reasonable juror could find that Defendant intended to cause the minor to assent." *Id.* "These facts are what make this case different."

The Government's arguments that Nitschke had the requisite intent were rejected by the district court. As to the content of the messages sent by Nitschke, the court found,

> While these statements certainly demonstrate that Defendant had a sexual interest in minors, they do not demonstrate an intent to entice or induce the fictitious minor via the internet. The Government appears to equate "interest" with "intent to persuade." Simple interest in prepubescent sex—or even an intent to engage in such acts—cannot be enough to establish an intent to persuade.

12

*Id.* at 14. In response to the Government's argument that Nitschke's concern that the detective was a police officer, the court found that the messages, "At best, they corroborate Nitschke's intent to have sex with a minor without getting caught, a point that Defendant does not dispute for the purposes of this Motion and that the Court has already explained is not the intent targeted by § 2422(b)." *Id.* at 14. Finally, in response to the Government's arguments that Nitschke expressed a willingness and desire to meet the detective and the fictional child to engage in sexual activity, the Court agreed the messages demonstrate the defendant had a willingness and desire to meet, "but, once again, a willingness and desire to have sex does not demonstrate an intent to persuade a minor via the internet. There are simply no facts that display anything beyond a 'willingness and desire' to join in the preexisting plan to meet the fictitious minor for sex." *Id.*

Mr. Johnston anticipates the facts to be presented at trial will be in line with those in Nitschke. The evidence will show that Mr. Johnston never sought Mr. Buenaga's help in procuring the child. He did not ask Mr. Buenaga to pass along any communication whatsoever to the minor. He did not make any promises to the minor through Mr. Buenaga. He did not offer any money or anything else of value. He did not invite the minor anywhere.

The facts to be presented at trial will not be in line with *Roman* or *Baird.* In *Roman*, it was important that the defendant sought to "utilize the influence of Katie's father on Katie." Additionally, Roman discussed taking the child shopping in an effort to obtain her assent. In contrast, Mr. Johnston did not send any messages that could be construed as trying to utilize Mr. Buenaga's ability to obtain his child's assent. In *Baird*, the court found that what pushed the case over the edge to simply arranging a sexual encounter was the defendant's discussion about presenting the child with a gift "to break the ice and gain her favor." Here, Mr. Johnston did not send any messages that indicate he was going to present the child with anything in an attempt to

gain favor and assent. None of the messages sent by Mr. Johnston will establish an effort to learn how to earn the child's trust.

### 4. Mr. Johnston did not attempt to persuade, induce, entice, or coerce Mr. Buenaga to give him access to the child.

The Fifth Circuit, in *United States v. Caudill*, found that face-to-face persuasion that could occur after a defendant secured access to a child was sufficient to support an attempt conviction. In *Caudill*, the Fifth Circuit explained,

> More recently, this court held in United States v. Olvera that a defendant can also violate the statute solely through communications with an adult whom he knows to be an adult if he directs "some of his intended inducements to the [child]." Caudill correctly asserts, however, that he did not seek to have any of his communications with the adult passed on directly to a child. The question on appeal, therefore, is whether this distinction removes Caudill's conduct from the scope of § 2422(b).

*United States v. Caudill*, 709 F.3d 444, 446 (5th Cir. 2013). Caudill responded to an internet advertisement posed by an undercover police officer. *Id.* at 445.

> Within twenty minutes after the ad was posted, Caudill responded by emailing a picture of himself and of his erect penis to the officer. He requested pictures of the girls and asked if the officer wanted money for access to the girls. The officer sent images of two clothed minor girls back to Caudill and told Caudill that the children were eleven and thirteen. Caudill then asked whether the girls would engage in sexual intercourse and deviate sexual intercourse, to which the officer replied that they would perform various sexual acts with Caudill. Caudill responded that he would use a condom and that he wanted the girls to wear diapers during the sessions of sexual intercourse and deviate sexual intercourse. This online conversation culminated in an arrangement that Caudill would pay one hundred dollars in exchange for the officer providing the two girls, who would then perform sexual acts with Caudill. That evening, Caudill drove to the designated hotel but left when the officer failed to respond to text messages. Caudill was arrested shortly thereafter, and the police found condoms, a $100 bill, and diapers in his vehicle.

*Id.* During a post arrest interview with law enforcement, Caudill admitted that it was his intent to have "sexual intercourse and deviate sexual intercourse with" the fictitious minor children. *Id.* The court's reasoning was premised heavily on the fact that Caudill was charged with attempt. In theory, he still could have followed through with the persuasive conduct had he not been arrested. *Id.* at 446.

> Even if the "girls" that the officer described to Caudill could theoretically assent to sexual activity as a general proposition, they could not assent to sexual activity with Caudill until they were aware of his existence and desire or intent to have sexual contact with them. Whether Caudill intended to persuade, induce, or entice them to have sexual contact when he met them at the hotel or he intended for the adult intermediary to persuade, induce, or entice them to have sexual contact with Caudill before he actually appeared at the hotel, Caudill's conduct violated § 2422(b).

*Id.*

The Eleventh Circuit used similar reasoning in *United States v. Murrell*, 368 F.3d 1283, 1287–88 (11th Cir. 2004). The Court found,

> Murrell communicated with an adult who he believed to be the father of a thirteen-year-old girl and who presumably exercised influence over the girl. Murrell's agreement with the father, who was acting as an agent or representative, implied procuring the daughter to engage in sexual activity. Because we find that Murrell acted with the intent to induce a minor to engage in unlawful sexual activity, the first element of attempt is satisfied.

*United States v. Murrell*, 368 F.3d 1283, 1287–88 (11th Cir. 2004). The court found the substantial step element of intent was satisfied as well because, "Murrell (1) made several explicit incriminating statements to Detective Spector; (2) traveled two hours to another county to meet a minor girl for sex in exchange for money; and (3) carried a teddy bear, $300.00 in cash, and a box of condoms when he arrived at the meeting site." *Id.* at 1288. "His actions, taken as a whole,

demonstrate unequivocally that he intended to influence a young girl into engaging in unlawful sexual activity and that his conduct was therefore criminal." *Id.*

Relatedly, the Second Circuit explained that the assent of the child "might be obtained, for example, by persuading a minor's adult guardian to lead a child to participate in sexual activity." *United States v. Douglas*, 626 F.3d 161, 164 (2d Cir. 2010). In *Douglas*, the defendant had copious communication with an undercover officer purporting to be the mother of a teenager and a three year old. *Id.* at 162-163. The defendant's conduct was aimed solely at the fictious female teenager. *Id.* at 162-163. The defendant consistently pushed "the mother" for access to the child. *Id.* He explained that he trained young girls as sex slaves. *Id.* at 162. The undercover officer posing as the mother, expressed nervousness and guilt about allowing the defendant to "train" the daughter. *Id.* at 162. The Defendant sought to reassure her and continued to try to persuade "the mother" to allow for the sexual activity to occur. *Id.* at 162-163. "Accordingly, the district court did not err in holding that Douglas could commit criminal enticement pursuant to § 2422(b) by communicating with a person he believed to be the adult guardian of a minor." *Id.* at 165.

The evidence produced will not be in line with *Murrell* or *Douglas*. There will be no evidence that Mr. Johnston was paying for access to the child or had a toy for the child as there was in *Murrell*. Moreover, unlike in *Douglas*, Mr. Johnston did not solicit access to the child from Mr. Buenaga.

To succeed under the *Caudill* approach, the Government must articulate how either Mr. Johnston or Mr. Buenaga could possibly obtain the child's assent otherwise, the case becomes about arranging sexual activity which is insufficient to support a conviction. As state by the Fourth Circuit, 18 U.S.C. § 2422(b) "…criminalizes an intentional attempt to achieve a *mental* state—a minor's assent—regardless of the accused's intentions [concerning] the actual consummation of

sexual activities with the minor." *Id.* (internal citations and quotations omitted) (emphasis in original). "Although 'it may be rare for there to be a separation between the intent to persuade and the follow-up intent to perform the act after persuasion, they are two clearly separate and different intents and the Congress has made a clear choice [in § 2422(b)] to criminalize persuasion and the attempt to persuade, not the performance of the sexual acts themselves.'" *Id.* (citing *United States v. Bailey,* 228 F.3d 637, 639 (6th Cir.2000)). Persuasive conduct or the attempt to engage in persuasive conduct is a necessary element. Mr. Johnston asserts that any sexual activity with the child is necessarily by force and thus falls outside the bounds of 18 U.S.C. § 2422(b). It is the Government's burden to demonstrate how this child could have been enticed to achieve the mental state – assent.

Mr. Johnston cannot have relied upon Mr. Buenaga to obtain the child's assent because a six month old baby simply cannot assent. A six month old baby cannot be persuaded, induced, enticed, or coerced to do anything. As a hypothetical, imagine a person wanting to cause a child to pick up an object. For most children, the adult could persuade or entice the child by giving the child something the child desires (a toy, candy, etc.) if the child picks up the object. The adult could coerce the child to pick up the object by yelling or threatening punishments. None of these things would work on a six-month old baby. A six-month lacks the development, understanding, volitional, or mental capacity to be assent to any conduct.

The crime of obtaining the child's assent is different than the underlying state crime listed in the indictment. In the Indictment, the Government alleged that the sexual activity would constitute Aggravated Sexual Battery in violation of Virginia Code § 18.2-67.3. When the child is less than 13 years old, the defendant is guilty if he or she sexually abuses the minor. Va. Code

Ann. § 18.2-67.3. Sexual abuse is defined as, "an act committed with the intent to sexually molest, arouse, or gratify any person, where:

> a. The accused intentionally touches the complaining witness's intimate parts or material directly covering such intimate parts;
> b. The accused forces the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts;
> c. If the complaining witness is under the age of 13, the accused causes or assists the complaining witness to touch the accused's, the witness's own, or another person's intimate parts or material directly covering such intimate parts; or
> d. The accused forces another person to touch the complaining witness's intimate parts or material directly covering such intimate parts.

Va. Code Ann. § 18.2-67.10 (West). The statutes do not discuss the issue of assent or consent because such an element is unnecessary when the child is young. There is no need to distinguish between consensual and nonconsensual conduct. In contrast, 18 U.S.C. § 2422(b), by including the words persuade, induce, entice, and coerce, does cover specifically and only efforts aimed at obtaining the minor's assent.

The youngest victim defense counsel has been able to find in a coercion and enticement case was three years old. In United States v. Hite, the D.C. Circuit court addressed a case where the intermediary had access to a twelve year old girl and a three year old boy. United States v. Hite, 769 F.3d 1154, 1158 (D.C. Cir. 2014). In the course of two weeks of communication,

> With respect to J.P.'s three-year-old nephew, Hite suggested that "a more gradual way to proceed" would be appropriate, such as taking a shower together or wrestling in their underwear. … In addition, Hite proposed using "jelly or honey" to "keep him enticed," … and suggested using the peanut-butter-and-jelly mix that he had received as a gag gift with the boy, noting that it "would be perfect to stimulate oral exploration."

18

*Id.* (internal citations omitted). The court explicitly rejected, "the Government's argument that § 2422(b) does not require the defendant to attempt to transform or overcome the minor's will." *Id.* at 1164. Citing to *Nitschke*, the court found, "where an adult intermediary is involved, the defendant's interaction with the intermediary must be aimed at transforming or overcoming the child's will to violate § 2422(b)." *Id.* The Circuit Court did deviate from *Nitschke*'s finding that the internet must be used for the persuasive conduct.

> Consistent with this reasoning, we see no requirement that the defendant or his intermediary use (or intend to use) the telephone or Internet for the decisive act of persuasion of the minor. Where an adult intermediary is involved, we hold that "using the mail or any facility or means of interstate or foreign commerce" pursuant to § 2422(b) is satisfied if the defendant knowingly and actively employs such interstate means for the essential function of communicating with the adult intermediary for the purpose of persuading, inducing, enticing, or coercing the minor.

*Id.* at 1165. Factually, the court explained,

> ..the Government's evidence showed that Hite used the telephone to encourage the adult intermediary to perform a sexual act on the three-year-old boy during a webcam session the next day, which a jury could construe as using the interstate means to have the adult intermediary perform a "sexual grooming" activity with the boy, *see United States v. Berg,* 640 F.3d 239, 252 (7th Cir.2011), with the aim of inducing the boy thereby to engage in sexual activity with Hite.

*Id.* at 1165-1166. Nevertheless, the Court vacated the jury's verdict due to a jury instruction issue finding that additional language in the jury instruction that the "'government must only prove that the defendant believed that he was communicating with someone who could *arrange* for the child to engage in unlawful sexual activity" was erroneous." *Id.* at 1167. "The District Court's error was highly prejudicial. Following this flawed instruction, the jury could have convicted the defendant

19

without necessarily finding that he intended to transform or overcome the will of either fictitious minor, so long as they found that he sought to arrange for sexual activity with them." *Id.*

In *Hite*, the defendant expressed a plan to persuade the child to assent to sexual activity using food. Using the hypothetical mentioned earlier, a three year old can be persuaded to pick up an object. A three year old has enough language skills to understand a simple command such as picking up a toy. A three year old can be bargained with to a sufficient degree that he or she can be persuaded, induced, enticed, or coerced to engage in conduct. While defense counsel does not purport to know at what age most children obtain the developmental ability to be persuaded, it is on the Government to prove that the child at issue in this case could be.

### 5. Mr. Johnston did not take a substantial step towards persuading the child to assent to sexual activity.

Although the court found Nitschke lacked the requisite intent, the D.C. court went ahead and analyzed the second element of the attempt crime, whether Nitschke had taken a substantial step towards the completion of the crime. As the Government is likely to do in Mr. Johnston's case, the Government in *Nitschke* argued that the defendant had taken several substantial steps. The Government argued that the attempted enticement occurred based on the communications between the adults in which Nitschke expressed interest in sexual activity with the fictitious minor and made arrangements to meet. *Id.* at 15. "Second, the Government argues that [t]he fact that the defendant actually traveled to the meeting location ... also constituted a 'substantial step' towards completion of the crime." *Id.* at 15 (internal citations omitted). The court found that neither argument held water. *Id.* As was the case with respect to the culpable intent element of attempt, there was "no evidence exists that Nitschke intended to persuade the fictitious minor via the internet, either directly or indirectly." *Id.* Then, "To the extent the Government is arguing that a

substantial step is achieved by arranging a face-to-face meeting for the purpose of subsequent persuasion, it is incorrect. Later face-to-face persuasion, as explained above, is not criminalized under § 2422(b); accordingly, arranging to meet for such persuasion cannot be a substantial step either." *Id.*

Again, Mr. Johnston's case is in line with *Nitschke*. Here, Mr. Johnston lacked the requisite intent for the reasons stated above. Arranging a face to face meeting is insufficient to establish the necessary substantial step. The crime centers on the child's assent. The Government must establish that Mr. Johnston took a substantial step to securing the child's assent.

In cases where a defendant communicated solely with an intermediary and showed up for a face to face meeting, courts have held a substantial step was taken when defendants have brought things with them that could be used to persuade the child to assent to the sexual conduct. In *Roman*, the defendant asked the father what the child liked "sexually." *Roman*, 795 F.3d at 518. The defendant also communicated a plan to take the child shopping for clothes. *Id.* In *Baird*, the defendant asked the intermediary about what gift would "best earn the child's trust." *Baird*, 70 F.4th at 394. The defendant intended to present the child with candy. *Id.* In *Caudill*, the defendant was arrested with the cash to pay for the sexual activity, conducts, and the diapers that had been discussed. *Caudill*, 709 F.3d 445. In *Murrell*, the defendant had money to pay for the sexual acts and a teddy bear. *Murrell*, 368 F.3d at 1288. There will be no evidence that Mr. Johnston was arrested with any item that could be used to obtain the child's assent.

### D. The evidence will not support a charge that Mr. Johnston aided or abetted Mr. Buenaga to violate 18 U.S.C. § 2422(b).

Mr. Buenaga neither completed the crime with Mr. Johnston's assistance nor did he intend to complete the crime described in 18 U.S.C. § 2422(b). Mr. Buenaga did not use a facility of

interstate commerce to knowingly entice the child. He did not use a facility of interstate commerce to gain access to the child; he already had it. He did not nor could he have communicated with the child via a facility of interstate commerce to obtain her assent. Lastly, due to the age of the child, he could not obtain her assent. Because Mr. Buenaga did not attempt nor complete the offense charged, Mr. Johnston cannot be said to have aided or abetted him.

II.     **Count 8 – Production of Child Pornography in violation of 18 U.S.C. § 2251(a)**

18 U.S.C. § 2251(a) provides,

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, or in any Territory or Possession of the United States, with the intent that such minor engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct, shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed.

The charge contains three essential elements "(1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce." *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009). In relevant part to Mr. Johnston's case, the definition of sexually explicit conduct includes actual or simulated

masturbation or the lascivious exhibition of the anus, genitals, or pubic area of any person. 18 U.S.C. § 2256(2)(A). As recently recognized by the Fourth Circuit, Congress did not expressly define "lascivious exhibition." *United States v. Sanders*, 107 F.4th 234, 261 (4th Cir. 2024), *cert. denied,* 145 S. Ct. 1434, 221 L. Ed. 2d 557 (2025).

The Fourth Circuit has adopted the *Dost* factors for determining whether a visual depiction is lascivious. *United States v. Sanders*, 107 F.4th 234, 263 (4th Cir. 2024), *cert. denied,* 145 S. Ct. 1434, 221 L. Ed. 2d 557 (2025). In adopting use of the *Drost* Factors, the Fourth Circuit expressly ordered that trial courts should ensure that a jury (1) is not instructed to rely exclusively on the *Dost* Factors, (2) understands that no single *Dost* Factor is dispositive, and (3) is discouraged from a strict and mathematical application of the *Dost* Factors. *Id.* The *Dost* Factors are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> (4) whether the child is fully or partially clothed, or nude;
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 261.

As was the case with the enticement charge, several elements are not contested. The child in the photograph is less than 18 years old. The visual depiction was produced using materials that had been transported in interstate or foreign commerce. Jurisdiction is not contested. It is contested whether Mr. Johnston used the minor for the purpose of producing the visual depiction.

Several uncontested facts will be established during the trial. The child is asleep or otherwise not paying attention. The child is clothed. The genitalia of the child are not shown in the

23

depiction. An exposed penis from an adult male is visible in the depiction. The image does not depict masturbation by the male. While Mr. Johnston will argue the child was not being touched by the male, the Government may argue to the contrary.

In *U.S. v. Thomas*, the Fourth Circuit addressed a charge involving a sleeping child. The Court found that the defendant's exposure of the child's genitals satisfied the elements of 18 U.S.,C. § 2551(a). *United States v. Thomas*, 92 F. App'x 960, 961 (4th Cir. 2004).

In *U.S. v. Osuba*, the Second Circuit found the fact the adult male was masturbating in the depiction to be outcome determinative. The minor was a 17 year old girl who was fully clothed and asleep on a couch. *United States v. Osuba*, 67 F.4th 56, 59 (2d Cir. 2023). The defendant created two short videos. *Id.* "They show him masturbating close to the minor—first sitting or lying near the couch, then standing over the minor and ejaculating toward her. He was 'getting off,' he later said, to 'the image of [the teenage girl] on the couch.' 'I came on her,' he told the other Kik user, attaching the videos. *Id.* at 59-60 (internal citations omitted). The Second Circuit reasoned that while the statute requires engagement of the child, the engagement "can be active or passive." *Id.* at 62. The Second Circuit held that a rational jury could have concluded that the defendant used the minor to engage in sexually explicit conduct. *Id.* at 63.

> Osuba's sexual activity was wholly directed toward her, in a way that rendered her a participant (albeit a passive one) in that activity. He set up the camera to show her right next to him. He ejaculated toward her, missing her arm only narrowly. He told the Kik user to whom he sent the videos, "I came on her." Gov't. Ex. 18-J at 0:12. He said that he was "getting off" to her presence. Gov't. Ex. 18-C at 2:03. By creating a video depicting a form of "sexually explicit conduct" enumerated in § 2256(2)(A) (here, masturbation), the intended consummation of which was visibly directed toward a minor who was physically present, Osuba crossed the line from "a simple display of adult genitals around a sleeping minor" to showing his victim as "an inanimate body" upon which he was acting sexually. Lohse, 797 F.3d at 521.

24

*Id.*

In *U.S. v. Sprenger*, the Seventh Circuit held that the minor must be engaged in sexually explicit conduct. The defendant,

> took photographs of Victim A while she was sleeping and in them, he photographed his naked, erect penis next to Victim A's face, and his own face, with tongue sticking out, next to Victim A's clothed groin. He also admitted in the plea agreement that he used Victim A to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct.

*United States v. Sprenger*, 14 F.4th 785, 791 (7th Cir. 2021). The Seventh Circuit found the district court plainly erred in accepting the defendant's plea to child production based on those facts. *Id.* The court noted a prior holding, "In *Howard*, we held that § 2251(a) requires that the offender create images that depict a minor, and not the offender alone, engaged in sexually explicit conduct. 968 F.3d at 721." *Id.* In *Howard*, the Seventh Circuit, "we read § 2251(a)'s language as requiring "the government to prove that the offender took one of the [statute's] listed actions to cause *the minor* to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct." *Id.* (emphasis in original)." *Id.*

> And given the defendant in *Howard* created images of himself masturbating next to a clothed, sleeping minor, we vacated his conviction because the images he created were not child pornography as they showed only him and not the minor engaged in sexually explicit conduct. *Id.* at 718, 724. So too here. Because the photographs Sprenger took depicted himself but not Victim A engaged in sexually explicit conduct, Sprenger's conduct does not qualify as a violation of § 2251(a).

*Id.*

The *Eleventh* Circuit took a different approach in a masturbation case in *United States v. Dawson*. In the case, the court asked, "whether an offender 'uses' a minor in violation of § 2251(a)

25

only by having the minor engage in sexually explicit conduct, or whether an offender 'uses' a minor when the minor's presence is the object and focal point of the offender's sexual desire as the offender, not the minor, engages in the sexually explicit conduct." *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023). In the case, the court noted, "Dawson's daughter is not merely present in the videos where Dawson happens to be exposing his penis and masturbating. Rather, Dawson's daughter—or to be more precise, her presence—is being used as the object of Dawson's sexual desire as he engages in sexually explicit conduct." *Id.* at 1238. The court noted the defendant, "panned the camera from the child to himself masturbating and back to the child, recording his exposed and erect penis in close proximity to the child—even going so far as to touch her hair with his penis in one video." *Id.* "Dawson further admitted that having his eleven-year-old in his presence while he masturbated was arousing." *Id.* The court concluded, "Because Dawson's daughter was passively involved in Dawson's sexually explicit conduct by serving as the object of Dawson's sexual desire, Dawson's actions constituted the use of a minor to engage in sexually explicit conduct in violation of the statute." *Id.*

The Eleventh Circuit explicitly disagreed with the Seventh Circuit's approach in *Howard*, cited in by *Sprenger*. In rejecting the *Howard* reasoning that the interpretation of the term "uses" may make the statute too broad and its hypothetical, the Eleventh Circuit explained, "Here, unlike in the *Howard* hypothetical, Dawson admitted that he found the act of masturbating to his daughter *in her presence* sexually arousing. In other words, it was the child's presence that Dawson found sexually arousing, which is a circumstance entirely different from the *Howard* hypothetical where the child is not immediately present." *Id.* at 1238. "Here, Dawson used the presence of his eleven-year-old daughter as the object of his sexual desire as he engaged in sexually explicit conduct by

26

masturbating in her presence. He recorded this conduct and distributed it over the internet." *United*

*Id.* at 1239.

Recently, in *United States v. Deritis*, the Fourth Circuit addressed nudity in the context of

the *Drost* Factors. The Fourth Circuit clarified that a district court's reliance on the *Dost* factors in

jury instructions is permissible where "the trial court ensures that the jury: (1) understands that

mere nudity is not sufficient to establish a "lascivious exhibition"; (2) is not instructed to rely

exclusively on the *Dost* Factors, (3) understands that no single *Dost* Factor is dispositive, and (4)

is discouraged from a strict and mathematical application of the *Dost* factors. 107 F.4th at 263."

*United States v. Deritis*, 137 F.4th 209, 220 (4th Cir.), *cert. denied,* 146 S. Ct. 270, 223 L. Ed. 2d

100 (2025). The court found that a visual depiction of the appellant's penis with his minor step-

daughter's hand depicted sexually explicit conduct. *Id.* at 221. The court noted that the minor's

hand was touching the penis. *Id.* at 215.

Mr. Johnston anticipates that an analysis of the *Dost* Factors will weigh against concluding

that the image is lascivious. The focal point is not on the child's genitalia or pubic area. The setting

is not sexually suggestive. The child is not in an unnatural pose or in inappropriate attire. The child

is fully clothed. The image does not suggest sexual coyness or a willingness to engage in sexual

activity. As recognized in *Deritis*, mere nudity is not sufficient to establish a lascivious exhibition.

While strict adherence to the *Drost* Factors is not required and they are not an exclusive list of

factors, finding the image at issue in Mr. Johnston's case is lascivious although none of the *Dost*

Factors are met is akin to ignoring them entirely.

Unlike in *Thomas*, the child's genitalia are not exposed. Unlike in *Osuba* and *Dawson*,

there is no masturbation which expressly falls within the definition of sexually explicit conduct

and does not require a lascivious analysis. Unlike in *Sprenger*, the male did not place his penis

27

next to the child's face nor did he stick out his tongue next to the child's groin. Unlike in *Dawson* and *Deritis*, the male did not touch the child. Mr. Johnston anticipates the image to be introduced for this count does not constitute child pornography.

## III.   Conclusion

Once the Government rests, Mr. Johnston will make a Rule 29 motion. For the enticement and production charge, Mr. Johnston will refer to the law and cases cited herein as he asks this Court to return a not guilty verdict on those charges.

Respectfully submitted,

*/s/ Stephanie F. Kessler*
STEPHANIE F. KESSLER (0092338)
Kessler Defense LLC
500 East Main St, 1600
Norfolk, VA 23510
(513) 316-5807
stephanie@kesslerdefense.com

*Attorney for Ryan Johnston*