**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF VIRGINIA**

**Norfolk Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 2:25cr31** |
| | ) | |
| **RYAN WADE JOHNSTON,** | ) | |
| | ) | |
| ***Defendant*.** | ) | |

**GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING FACTORS IN THE PRESENTENCE REPORT**

COMES NOW the United States of America, by undersigned counsel, and in accordance with Section 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guidelines sentencing, the government hereby represents that it has reviewed the presentence report (PSR) prepared by the United States Probation Officer. After reviewing the Presentence Investigation Report and applying the factors of Title 18, United States Code, Section 3553(a) to this case, the government's position is that a sentence of 50 years of incarceration is appropriate.

## I. The United States Has No Objection to the PSR

The United States hereby represents that it has no objections to the facts, the findings or to the calculations of the presentence report. The United States has received a total of 3 victim/character statements from the victims' friends and family in this case and they have been provided to the Probation Officer and to the defendant. Further, the United States understands that at lease one of these victims' family members desire to address the Court at the sentencing hearing. Three of the victims are seeking restitution and some of those restitution claims have been resolved. Should any additional victim impact statements or restitution requests be

received, the government will forward them to the Court and defendant prior to sentencing. The United States intends to call Special Agent David Desy of the Federal Bureau of Investigation (FBI) to testify at the sentencing hearing and will introduce one image of child pornography that remains in dispute and is discussed below as well as potentially several chats the defendant engaged in and clips of the defendant's recorded interview with FBI agents on the day of his arrest. The United States reserves the right to present any other evidence needed in support of the sentencing guidelines and to rebut the defendant during its sentencing presentation.

## II. **Defendant's Objection Related to Application of Sentencing Guideline Section 1B1.2(c).**

Defendant objects to the application of U.S. Sentencing Guideline Section 1B.1.2(c) that permits the Court to calculate the defendant's sentencing guidelines based upon additional charges established by way of plea agreement. Defendant contests whether the stipulated facts in the statement of facts are sufficient to establish the elements of a violation of 18 U.S.C. § 2251(a), production of child pornography. If they don't, then defendant asserts that his guidelines should be 151-188 months, the range calculated for a violation of 18 U.S.C. § 2252A(a)(2)(A), receipt of child pornography, the most serious counts of conviction. Because the agreed on facts in this case do establish that the defendant produced child pornography, his objection should be overruled and the Court should adopt the guidelines as calculated under 18 U.S.C. § 2251(a).

As part of the plea agreement in this case, as is the procedure in virtually every felony case, the government and the defendant agreed to a written statement of facts to support the defendant's guilty plea. ECF No. 76. Included in this statement of facts is a section entitled "Other Relevant Conduct" that the parties agreed would "be presented to the Court for sentencing purposes" and had this case gone to trial, would "have been introduced into evidence against [defendant]." *Id.*

at 4. Relevant for the production of child pornography guideline is paragraph 13, which stated in full:

> With respect to Count Eight, on the date and location listed in the superseding indictment, JOHNSTON produced an image file that depicted his own erect penis next to Minor Victim 2 while she was sleeping. JOHNSTON knowingly created the image file using his mobile phone, a device that had been shipped and transported in interstate and foreign commerce.

*Id*. at 6.

On these facts, the Probation Officer concluded that the defendant violated 18 U.S.C. § 2251(a) and under Section 1B1.2(c) determined that the defendant should be treated as if he had been convicted of this additional charge. As such, the Probation Officer calculated the sentencing guidelines pursuant to Section 2G2.1 for production of child pornography and the defendant's offense level was calculated to be a 41, with a guideline range of 360-960 months of incarceration.

In determining whether the stipulated facts establish by a preponderance of the evidence that the defendant committed the offense of production of child pornography, the Court need only look to the elements of the offense itself. A violation of 18 U.S.C. § 2251(a) has the following elements:

> (1) the victim was less than 18 years old;
>
> (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and
>
> (3) the visual depiction was produced using materials that had been transported in interstate or foreign commerce.

*United States v. McCauley*, 983 F.3d 690, 695 (4th Cir. 2020)

In the instant case, Minor Victim 2 (MV2), the child depicted in the file was 4 years old at the time and the parties agreed that the image was created on a device that had been shipped and transported in interstate and foreign commerce. This leaves only whether the defendant used

MV2, to take part in sexually explicit conduct, for the purpose of producing a visual depiction of the same. Defendant takes particular issue with the "sexually explicit conduct" component of these elements arguing that "image does not constitute 'sexually explicit conduct'".

"Sexually Explicit Conduct" is defined under 18 U.S.C. § 2256(2)(A) and for the purposes of this case, the only relevant definition falls under subsection (v), the "lascivious exhibition of the anus, genitals, or pubic area of *any* person" (emphasis added). There is no dispute that MV2 is clothed, in her pajamas, sleeping in bed, and the defendant is present with his erect penis next to her. The United States contends the defendant's testicles are making contact with MV2 and the defendant denies this assertion. In either event, the display of the defendant's own genitals meets the definition of sexually explicit conduct because it's a "lascivious display" of *any* person's genitals, as defined by the statute. There is no requirement that the genitals being lasciviously displayed be that of a minor and many Courts have found that a person lasciviously displaying their genitals next to a sleeping or otherwise unaware child meets the definition of sexually explicit conduct. *See United States v. Osuba*, 67 F.4th 56, 63 (2d Cir. 2023) ("[W]e hold that a rational jury could have concluded, beyond a reasonable doubt, that Osuba used the [clothed, sleeping] minor to engage in sexually explicit conduct."); *United States v. Dawson*, 64 F.4th 1227, 1239 (11th Cir. 2023) ("Here, Dawson used the presence of his eleven-year-old daughter as the object of his sexual desire as he engaged in sexually explicit conduct by masturbating in her presence."); *United States v. Finley*, 726 F.3d 483, 495 (3d Cir. 2013); ("[w]e hold that the District Court did not err by instructing the jury that a sleeping child can 'engage in' sexually explicit conduct within the context of § 2251(a)."); *United States v. Lohse*, 797 F.3d 515, 521 (8th Cir. 2015) (holding that a sleeping child can "engage in" sexually explicit conduct within the context of § 2251(a).).

The defendant rests his argument on his assertion that the display of his penis in this manner is not lascivious. The Fourth Circuit has recognized that defining "lascivious exhibition" is not

always easy and in *United States v. Courtade*, 929 F.3d 186, 192 (4th Cir. 2019), recognized that many courts have looked to the six factors articulated in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D. Cal. 1986). Those factors are:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986).

In *United States v. Sanders*, the Fourth Circuit limited the application of the *Dost* factors because they "may not be necessary or helpful in every child pornography prosecution…" In that case, the court held that trial courts should ensure that a jury (1) is not instructed to rely exclusively on the *Dost* Factors, (2) understands that no single *Dost* Factor is dispositive, and (3) is discouraged from a strict and mathematical application of the *Dost* Factors. *United States v. Sanders*, 107 F.4th 234, 263 (4th Cir. 2024), cert. denied, 145 S. Ct. 1434, 221 L. Ed. 2d 557 (2025). Thus, while *Dost* factors are instructive, they are not dispositive in determining whether conduct is "lascivious" for the purposes of the definition of sexually explicit conduct.

The instant case is one in which the six *Dost* factors are not particularly dispositive, especially since MV2 is clothed. What is dispositive however is that this image objectively

"depicts a 'lascivious exhibition' because the image[]" makes clear that its "purpose was to excite lust or arouse sexual desire in the viewer." *Courtade*, 929 F.3d at 193. Defendant is in bed with his sleeping daughter, his erect penis is exposed and his testicles are touching her clothed buttocks. There is nothing natural, ordinary, or innocent about this image. The only purpose that can be divined from an individual taking this photo is to in some fashion sexualize a child and excite lust or sexual desire in whomever views the image. Nothing more is required to establish a lascivious exhibition. And if this is a lascivious exhibition of the defendant's genitals, it follows that the image constitutes sexually explicit conduct for the purposes of 18 U.S.C. § 2256(2)(A), and in turn all of the elements are met for a violation of 18 U.S.C. § 2251(a). Indeed, as noted above, many courts have found that defendant's exposed genitalia next to sleeping children is sufficient to meet the definition of sexually explicit conduct for the purposes of 18 U.S.C § 2256(2)(A). Because the image the defendant created meets this criteria, Section 1B1.2(c) of the Sentencing Guidelines is applicable and the defendant's objection should be overruled.

## III. Defendant's Objection Related to Application of Sentencing Guideline Section 2G2.1(b)(2)(A).

The defendant also objects to a two-level enhancement for sexual contact pursuant to Section 2G2.1(b)(2)(A) of the sentencing guidelines. That section permits a two-level enhancement for a sexual act or sexual contact. The parties agree that facts of the case do not support an enhancement for a sexual act, but the United States asserts that a sexual contact occurred and the enhancement should be applied. According to Section 2G2.1(b)(2)(A) sexual contact has the meaning given that term in 18 U.S.C. § 2246(3) and that statute defines sexual contact as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person". 18 U.S.C.A. § 2246 (West).

The instant case demonstrates that a sexual contact has occurred. As the United States has noted above, this defendant created an image of a sleeping minor and touched his exposed penis, specifically his testicles, to her clothed buttocks. The touching was intentional, there was nothing accidental about this contact as she was asleep and the defendant posed himself next to her. The contact was with her clothed buttocks and the intent was to arouse and gratify the sexual desires of the defendant. This image meets all of the statutory elements for "sexual contact" and the enhancement should be applied.

Defendant relies heavily on *United States v. Skinner,* 70 F.4th 219 (4th Cir. 2023) and other out of circuit authority for the proposition that sexual contact *requires* masturbation. But none of those cases stand for that proposition, rather they hold that masturbation meets the definition of sexual contact. *Skinner*, 70 F.4th at 230 ("the term 'sexual contact' plainly covers Skinner's on-camera masturbation during the live video calls with R.D."); *United States v. Aldrich*, 566 F.3d 976, 979 (11th Cir. 2009) ("the plain meaning of "sexual contact" under U.S.S.G. § 2G2.1(b)(2)(A) and 18 U.S.C. § 2246(3) includes the act of masturbating."); *United States v. Raiburn*, 20 F.4th 416, 424 (8th Cir. 2021) (§ 2246(3)'s definition of "sexual contact" includes masturbation); *United States v. Pawlowski*, 682 F.3d 205, 213 (3d Cir. 2012) ("The District Court, therefore, correctly interpreted § 2G1.3(b)(4)(A) to include masturbation as a form of "sexual contact" covered by the language of the section.").

None of these cases stand for the proposition that sexual contact requires masturbation to meet the statutory definition, rather they all stand for the proposition that sexual contact *includes* masturbation. And for good reason, the defendant's reading of this statute would omit from the definition of sexual contact the scenario at play here, that is, a defendant making contact with a minor victim with his own genitalia. It would be an absurd result that a person could put their genitals in contact with a minor victim and such conduct would not be encompassed by the

statutory definition of "sexual contact." Therefore, the United States submits that the defendant's intentional touching of his genitals to the victim's clothed buttocks meets the statutory definition of sexual conduct and the defendant's objection to receiving a sentencing enhancement pursuant to Section 2G2.1(b)(2)(A) should be overruled.

## IV. A Sentence of Life plus 50 Years of Incarceration Complies with the Factors and Considerations Set Forth in 18 U.S.C. § 3553(a) and (b).

In *United States v. Booker*, 543 U.S. 220, 264 (2005), the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." *See also United States v. Biheiri*, 356 F.Supp.2d 589, 593 (2005) ("Justice Breyer's majority opinion in [*Booker*] sensibly teaches that the Sentencing Guidelines must still be taken into account pursuant to 18 U.S.C. § 3553(a) in fashioning an appropriate sentence."). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker,* 543 U.S. at 264 (*quoting* 28 U.S.C. § 991(b)(1)(B)). The Fourth Circuit has provided the following guidance in the wake of *Booker*:

> A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence.

*United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). Thus, sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a).

Section 3553(a) requires a sentencing court to consider the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most effective manner. Applying these sentencing factors to the facts of this case demonstrates that a sentence of fifty years of incarceration is appropriate and reasonable.

**A. Nature and Circumstances of the Offense**

Defendant RYAN WADE JOHNSTON can reasonably be described as a sexual predator of children. His conduct in this matter is horrific and merits a sentence of 50 years of incarceration. Defendant's first known foray into child pornography began in the fall of 2024, when the National Center for Missing and Exploited Children (NCMEC) first encountered him sharing images of child sexual abuse material (CSAM) across the KIK chat platform. As the Court knows, this behavior, standing alone, is abhorrent, and the type of behavior that typically merits a mandatory minimum sentence of 60 months and often results in sentences of 10 years or more. But this behavior doesn't stand alone and the defendant's conduct gets significantly worse from here.

The defendant encountered law enforcement because of his intentions to sexually abuse an infant on January 24, 2025. The defendant was arrested at the residence of his co-defendant Alex Tyler Buenaga with whom defendant planned to sexually assault a 6 month old infant. Buenaga and defendant had been chatting for days, each bragging with the other about their interests in child sexual assault and making plans with each other to meet. On the day they eventually met, defendant drove from Virginia Beach to Suffolk to abuse this infant despite the fact that his girlfriend was having surgery and needed him close by. Buenaga enticed defendant by sending him several of the videos that Buenaga created of himself abusing the infant (MV1). These videos depicted Buenaga inserting his penis in the mouth of the infant, digitally penetrating the same infant, and rubbing his penis along the infant's vagina. After receiving these videos, the defendant was not horrified, nor did make any attempt to contact authorities to report this abuse. Rather he

eagerly continued chatting with Buenaga and made plans to meet and engage in the sexual abuse of the infant.

These chats are illustrative of the defendant's intent on January 24, 2025, when he travelled to Buenaga's residence. During their conversation, Buenaga offered the infant up to the defendant to "touch" and later in their conversation Buenaga sent him a picture of the genitalia of another man suggesting to the defendant that that other man was going to come over to "taste [the infant's] pussy". In both instances, the defendant expressed his desire to sexually abuse the infant. The defendant stated, "maybe kiss her…a little taste would make my cock explode" and in response to the other man, defendant responded, "no no no me only".

| | | |
|---|---|---|
| Buenaga | You can touch her too if you want | 1/24/2025 2:49:11 PM(UTC+0) |
| Wade Perv/Johnston | Let's watch u then see how we feel i will absolutely love 2 but we will.go with how we feel | 1/24/2025 2:49:51 PM(UTC+0) |
| Wade Perv/Johnston | Maybe kiss her | 1/24/2025 2:50:03 PM(UTC+0) |
| Wade Perv/Johnston | A little taste would make my cock explode | 1/24/2025 2:50:28 PM(UTC+0) |

| | | |
|---|---|---|
| Buenaga | Bro just come here. | 1/24/2025 4:38:43 PM(UTC+0) |
| Buenaga | | 1/24/2025 4:47:24 PM(UTC+0) |
| Buenaga | This dude wants to taste [redacted] pussy | 1/24/2025 4:47:24 PM(UTC+0) |
| Wade Perv/Johnston | No no no me only | 1/24/2025 5:06:12 PM(UTC+0) |

The defendant also chatted with Buenaga over a number of other topics, including the two children that lived with defendant and his girlfriend. The defendant bragged to Buenaga about his relationship with the younger of the two children referring to her as "dirty and sexy" and that she "grabbed his shit" one evening while they were wrestling, and intimated that she was sexually interested in him. The defendant stated he leaves his "cum" in her clothes all the time.

| | | |
|---|---|---|
| Wade Perv/Johnston | She texts me about diddy all the time joking bout shit she shouldn't know about noone knows and I know she does she grabbed my shit one night by accident wrestling and she sleeps downstairs and I go down late and she always comes out of room to talk. We haven't done anything or even said anything but I know I can see it. But I can't take that chance I would but I have mine to get ready. But I leave my cum in her stuff for school all the time | 1/24/2025 2:57:13 PM(UTC+0) |

| | | |
|---|---|---|
| Wade Perv/Johnston | I'm watching her closely she hates her dad he's a dick so she confdes in me alot ill be there if she does i would love to make her mine and love her she's so sexy and I know dirty | 1/24/2025 3:17:16 PM(UTC+0) |

The defendant's text messages with this minor corroborate this exchange with Buenaga as defendant employed grooming techniques on this minor by indicating to her that their texts should be between only them and that she is mature and knowledgeable about "sex ed".

| | | |
|---|---|---|
| Johnston | Seeing how u are more mature and knowledgeable then most ur age and know way more then u should about things this should be funny to u ill send one real quick. This is how they should teach kids sex ed at school that's all I will say | 1/7/2025 6:03:01 PM(UTC-5) |
| [redacted] | Wtf | 1/7/2025 6:03:27 PM(UTC-5) |
| Johnston | https://www.tiktok.com/t/ZP8Fha943/ | 1/7/2025 6:04:19 PM(UTC-5) |
| Johnston | Ok first one | 1/7/2025 6:04:30 PM(UTC-5) |
| [redacted] | Wtf did I just see | 1/7/2025 6:05:18 PM(UTC-5) |

The defendant also had designs on grooming MV2 for sexual abuse. As noted in the statement of facts, defendant created an image of MV2 sleeping next to his erect penis. The defendant further had plans to have MV2 on the day he travelled to Buenaga's residence but those plans were foiled by MV2's mother's schedule:

| | | |
|---|---|---|
| Buenaga | We ever decide on a time to meet tomorrow? | 1/23/2025 5:59:14 PM(UTC+0) |
| Wade Perv/Johnston | Waiting on ex to let me know I will shortly | 1/23/2025 6:12:12 PM(UTC+0) |
| Buenaga | Ok. Where would you pick her up? | 1/23/2025 6:12:42 PM(UTC+0) |
| Buenaga | Not like exact location but area | 1/23/2025 6:12:56 PM(UTC+0) |
| Buenaga | Just curious how long it'd take to get there and back from my house | 1/23/2025 6:13:13 PM(UTC+0) |
| Wade Perv/Johnston | Change of plans not getting her till sat morning but would atll like to meet 2morrow ans smoke and see | 1/24/2025 4:50:14 AM(UTC+0) |
| Wade Perv/Johnston | Keeping her till Monday instead | 1/24/2025 4:50:35 AM(UTC+0) |
| Buenaga | I'm down still | 1/24/2025 4:50:49 AM(UTC+0) |

Buenaga confirmed the plan was to rape MV2, who was 4 years old at the time, in a chat he had with a different user:

| | | |
|---|---|---|
| Alex Bunga | Guy is bringing his 4 year old [redacted] over on Friday so I'll definitely need you around to goon | 1/23/2025 4:06:18 AM(UTC+0) |

| | | |
|---|---|---|
| Alex Bunga | Well I couldn't rape the 4 year old because they didn't come over | 1/23/2025 4:17:39 AM(UTC+0) |

Furthermore, the defendant specifically referenced MV2 in his chats with Buenaga. While discussing his grooming of the child noted above, defendant specifically stated, "I have [MV2] to get ready" referencing his desire to abuse her sexually.

| | | |
|---|---|---|
| Wade Perv/Johnston | She texts me about diddy all the time joking bout shit she shouldn't know about noone knows and I know she does she grabbed my shit one night by accident wrestling and she sleeps downstairs and I go down late and she always comes out of room to talk. We haven't done anything or even said anything but I know I can see it. But I can't take that chance I would but I have mine to get ready. But I leave my cum in her stuff for school all the time | 1/24/2025 2:57:13 PM(UTC+0) |

The facts of this case are horrific and there are several things the Court needs to consider. First, as noted above, is the tender age of MV1. It is indisputable that MV1 is as vulnerable a victim as the Court will ever see. A child between 3 to 6 months old is as completely defenseless

as a human being ever is in their entire life. A child this age is unable to walk, crawl, or effectively, move, completely unable to comprehend what is happening to them, unable to offer any resistance to the assault, and unable to report or remember the abuse. They are at their most vulnerable and need the most protection from their caregivers to protect them from the kind of abuse that was suffered in this case. It is also exceptionally rare to see cases with children this young as victims. For most people, seeing a child this young in distress triggers a protective response. The defendant saw an opportunity to gratify his sexual desires. He was not abhorred by the nature of the videos Buenaga sent to him nor was he outraged by the sexual access to MV1 Buenaga offered to him. He not only agreed to participate in the abuse, he traveled from one end of Hampton Roads to the other to do so, all while knowing his girlfriend was in surgery and relying upon him for her post-surgical care.

Second, the Court needs to consider in at least one aspect, this defendant's conduct is far more aggravating than Buenaga's. While Buenaga's offenses against MV1 shocks the conscience, she was Buenaga's only known victim. This defendant traveled to Suffolk to abuse MV1, and was eagerly anticipating a time he could abuse MV2. He took at least one picture of MV2 next to his erect penis and was actively grooming a third minor victim with whom he lived. He committed a form of sexual assault against her by surreptitiously ejaculating into her clothing on a regular basis all while chatting online and distributing child pornography over internet apps. This defendant is by any definition of the word a sexual predator of children. He only values them for their ability to gratify his sexual desires and nothing more.

**B. Characteristics and History of the Defendant**

The defendant has a conviction for obstruction of justice and misdemeanor embezzlement in which he was found to have stolen scrap metal and diesel fuel from his employer. These convictions are examples of a persistent fraud mentality that appears to permeate every aspect of

the defendant's life. He has a problem with telling the truth and taking responsibility for his actions. Although he pled guilty for his actions in this matter, he has yet to take full responsibility and admit his intentions of travelling to Buenaga's residence that day despite the clear and obvious evidence to the contrary. Defendant clings to the farce that he traveled there only to secure methamphetamines, despite the length and depth of the chats that defendant and Buenaga engaged in regarding child sex abuse. And the defendant's repeated dishonesties are on full display in this case. When he was first interviewed by investigators, he first claimed to know nothing about child sexual abuse and was only there for drugs. After consenting to a review of his phone and being confronted with his chats with Buenaga, the defendant pivoted again and made the claim he was only engaging in fantasy talk to ensure he could get the methamphetamines. The problem with this assertion is multi-fold because many of his statements to Buenaga regarding child sexual abuse were corroborated as true. The defendant had access to MV2 whom he was sexually interested in, as he told Buenaga. Defendant was grooming the other minor, as he told Buenaga. And finally, defendant essentially admitted that he had ejaculated into the socks and underwear of this minor, by not denying it and asking the agents if his doing so was against the law. Despite all this evidence, defendant refuses to accept full responsibility for his behavior and conduct in this case raising serious concerns about his ability to be rehabilitated and return to society.

Defendant has also demonstrated a fraud mentality as it relates in his behavior to others. As noted above, defendant has a fraud conviction, refuses to accept full responsibility for his actions in this matter, and has endeavored to manipulate and lie to those who are closest to him. While incarcerated, the defendant created a fake persona and communicated with his former live-in partner as if he were this fake person. He often suggested, through the guise of this fake persona, that he was in medical distress and was in the hospital. He further stated as the fake

persona that the defendant wanted to tell his former partner the full truth of what happened but could not. This charade was put to an end when the Western Tidewater jail alerted law enforcement who in turn alerted the former partner to the defendant's deception.

Likewise, the defendant routinely exaggerates his military service. During this jailhouse charade and in other contexts, the defendant is known to refer to himself as a "Recon" marine and has adopted the nickname "Recon". A "recon" marine is a reconnaissance marine, part of the Marine Special Forces, akin to an Army Ranger or a Navy SEAL and must undergo rigorous physical training requirements to earn the right to use this moniker. The defendant was not in any way shape or form a "recon" marine. Rather, he was a truck driver who was assigned to a light armored reconnaissance unit that is in no way affiliated with being a special forces marine and the defendant has thereby embellished his service record by calling himself "Recon". This behavior is just another example of the defendant's fraud mentality and his inability to accept reality. For these reasons, a sentence of fifty years is both necessary and appropriate.

**C. Need to Deter Future Criminal Conduct and to Protect the Public**

The defendant's sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public. The government avers that there is a strong likelihood that the defendant will return to abusing minor children. As discussed above he is a sexual predator. He refuses to accept full responsibility for his actions and cannot accept the consequences of his actions. He lives in a state of denial and until he accepts his conduct and role in these horrific offenses, he will remain a threat to commit future abuse. Further, the risk that the defendant and offenders like him pose to society support a significant sentence of imprisonment. This defendant, in particular, poses a tremendous risk that he will re-offend because of the sheer magnitude and depravity of his offenses. A lengthy sentence is therefore required to protect the public and deter him from considering the possibility

of engaging in future misconduct once released from incarceration.

### D. Need to Provide Treatment to the Defendant

Due to the nature of the defendant's crimes, the defendant should be ordered to participate in a sex offender treatment program while incarcerated.

### E. Other Relevant Factors

Section 3553(a) also addresses other the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence to criminal conduct, and to prevent unwarranted sentencing disparities. Here, a fifty year sentence would adequately address all of these concerns.

## V. <u>Conclusion</u>

For these reasons, as well as additional reasons to be more fully articulated during the sentencing hearing on this matter, the United States respectfully requests that the Court sentence the defendant to a term of fifty (50) years of confinement.

Todd W. Blanche
Attorney General

Theophani K. Stamos
First Assistant U.S. Attorney

By /s/
Joseph L. Kosky
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address - joseph.kosky@usdoj.gov